UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER LARUE                                              CIVIL ACTION

VERSUS                                                   NO. 10-2701

SHERIFF MARLIN N. GUSMAN ET AL.                          SECTION "C" (2)


**REPORT AND RECOMMENDATION**

Plaintiff, Peter LaRue, is a convicted prisoner currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin N. Gusman and the "New Orleans Sheriffs Office." LaRue alleges that, while incarcerated in the House of Detention ("HOD") unit of the Orleans Parish Prison system ("OPP"), he received constitutionally inadequate medical care for a ruptured appendix and that his personal property was lost and never returned to him after he was removed from his cell and transferred to medical facilities.  He seeks monetary damages.  Record Doc. No. 1 (complaint at ¶ V).

On November 4, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se; Tim Richardson, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

LaRue testified that he is currently incarcerated in the Dixon Correctional Institute based upon his guilty plea on a felony charge for which he is serving a five-year prison sentence.  He said the guilty plea occurred <u>before</u> the incidents upon which he bases this suit. LaRue testified that, although he has received and reviewed the medical records I previously ordered produced by defendants, Record Doc. Nos. 6, 16 and 17, he does not know whether they are accurate, and he disputes some of the dates reflected in them.  He confirmed that he asserts two claims in this case arising from his incarceration in HOD: (a) he was denied adequate medical care for a ruptured appendix, and (b) his personal property has never been returned to him.

LaRue testified that the incidents upon which he bases his medical care claim first began to occur on March 21, 2010, when he became sick after eating breakfast that morning. He stated that he experienced vomiting and abdominal pain that day. He confirmed the reference in the medical records that he went from his cell on the 7th floor of HOD to the 10th floor HOD medical department, where he was seen by a nurse.  He alleged, however, that he was not seen by the nurse until two days <u>after</u> the vomiting and abdominal pain had begun, when he first requested medical attention. LaRue said the nurse merely gave him Pepto-Bismol and took his temperature.  He stated that he had no

2

significant fever at that time, and his temperature was only about one degree above normal. He said the nurse then sent him back to his cell.

LaRue testified that "at least five" days later, he was sent to the hospital. Although the medical records indicate that he was found in his cell "down on the ground" on March 25, 2010, by a deputy, who then summoned medical assistance, LaRue stated that he could not tell whether the dates reflected in the medical records were accurate. He said, however, that he was found "down on the ground" in his HOD 7th floor cell by the deputy on the same day he was taken from OPP to the hospital for surgery. He stated that if the medical records show that his surgery occurred on March 26, 2010, "then that's the day." LaRue testified that "the dates [in the medical records] don't sound right because there were days when I laid in that bed, days and days" suffering with abdominal pain. He said that the delay was "at least five days" from the date he was sent back to his cell after initially seeing the nurse, before he was taken to the hospital. He stated that during that five days, he was seen by deputies who told him they would get him some help, but he was given no medical attention until the day he fell to his cell floor while trying to get out of bed and was found on the ground by a deputy.

LaRue testified that he waited in his cell at least five days without treatment before he fell, and then it took about four hours for jail personnel to decide that he needed to be sent to the hospital. He said he went to the hospital at about 1 or 2 p.m. that day, and the

surgery was performed at about midnight.  LaRue stated that once at the hospital, several tests were conducted, including a CAT scan, and he was told that his appendix had ruptured, "it looked like it had been a while," and the medical personnel were surprised he was not in more pain. "I wasn't prone to being a screaming kind of person when I was in pain," he said.

LaRue confirmed that appendix removal surgery was performed at the hospital. He said he was in the hospital for three or four days, when he was discharged and returned to the medical unit at HOD. He stated that after two days in the HOD medical unit, he was taken back to the hospital "because I was leaking fluids that were coming out of the [surgical] wound." He described the HOD medical unit as an area separated from the rest of the inmate population, "a wing for inmates next to a medical facility." LaRue said that while in the medical HOD unit, he was given medication three times a day, but received no real treatment. He said he had three surgical staples and a surgical wound dressing of some sort, but the staples were removed when he was brought back to the hospital so that the surgical wound could drain.

LaRue said that while he was in the HOD medical unit upon his initial return from the hospital, he had a towel on the surgical wound under a jump suit, and the fluid soaked both. He testified that he changed towels and jump suits a couple of times before he was returned to the hospital by one of the HOD nurses within two days.  He said he did not

4

know if the notations in his medical records were accurate in stating that it was Dr. Gore at HOD who assessed his post-surgery situation and sent him back to the hospital. He said it was a gray-haired woman who ordered him sent back.

LaRue testified that upon his return to the hospital, the surgical staples were removed, his bandages were changed twice a day, and his medications were altered, including that he was given stronger pain medication and two different kinds of antibiotics. He said that he spent two days in the hospital on his second trip and that the drainage from the wound was brought under control, at which time he was returned to HOD and put back in the medical unit, where he stayed until June 2, 2010, when he was transferred to Hunt Correctional Center. LaRue said that about a week or so after he was returned to HOD from the hospital, "the wound finally closed." He said he was transferred from OPP about two weeks later. He said that during his return stay in the HOD medical unit, his wound dressing was changed and he was given his medications, except on one occasion when his medication was stolen and he was without pain medication for several days thereafter, until "I got that reinstated." He said his claim in this case is against OPP personnel only and that he has no complaint against anyone at any other prison facility.

LaRue alleged that his medical care at OPP for his ruptured appendix "was quite inhuman. . . . I was in extreme pain, I kept telling them I was in extreme pain, and I

wasn't given any kind of medical attention." He said he had no history of abdominal problems before his appendix ruptured.

As to his second claim, LaRue confirmed that his complaint is that during his stay in the HOD medical unit, he asked for his personal belongings, but he was told that they could not be found.  He testified that his personal items included a set of false teeth, a pair of glasses, boots, clothing, a comb, note papers, stamped envelopes and a letter from the FBI concerning a credit owed to him if he is paroled.  He said these were all items that were in his cell bunk at the time he was taken from his cell to the hospital, but they have never been returned to him.  He said the items were not given to him while he was in the OPP medical unit and that they have never been shipped to him at his new location.

Asked to clarify the discrepancies in the chronology of events reflected between his testimony and the verified medical records, LaRue stated that his abdominal pain began two days before jail officials responded to his request for medical treatment and he was first taken to see a nurse, who merely took his temperature and gave him Pepto-Bismol.  He said that it was about five days after he returned to his cell that he fell and was taken back to the medical unit and then to the hospital for surgery.  He agreed with the hospital records showing that he was discharged from the hospital on March 29, 2010, at the end of a four-day initial stay for his surgery.  He agreed that he experienced problems with fluid drainage from his surgical wound on April 1, 2010, and that he was

6

returned to the hospital that same day.  He confirmed that he stayed in the hospital on the second visit for two days, when he was returned to the HOD medical unit, before being transferred from OPP on June 1, 2010.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

8

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a

claim of violation of his constitutional rights for which relief under Section 1983 may be granted, even under the broadest reading.[1]

II.    MEDICAL CARE

LaRue complains that he received constitutionally inadequate medical care for his ruptured appendix.  LaRue was a convicted prisoner at all relevant times about which he complains. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825,  847 (1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively,

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.  "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a stringent standard of fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action. Board of the
> County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S.
> 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard
> permits courts to separate omissions that "amount to an intentional choice"
> from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

11

In this case, LaRue's allegations negate any inference that defendants acted with <u>deliberate</u> <u>indifference</u>.  Although a ruptured appendix may present a serious medical need, LaRue's testimony and the verified medical records establish that jail personnel were <u>not</u> deliberately indifferent to his medical condition in the constitutional sense. LaRue has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials. He was seen by a nurse within two days after he first experienced pain.  His temperature was near normal and she gave him Pepto-Bismol for what she believed was mere abdominal upset.  Although plaintiff was not subsequently treated for five days, he was ultimately taken to the hospital for emergency treatment, including surgery, then kept in the jail medical unit post-surgery. He was given medication and other post-surgical attention, including a return to the hospital as his condition required it.  His surgical wound ultimately healed.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent to plaintiff's condition.  While it is clear from his allegations and testimony that he is not satisfied with the speed or nature of his medical care, and that he experienced some delay in his initial treatment, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs.  Deliberate indifference is an
> extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such

showing has been made on the current record.

Contentions like LaRue's that amount to a disagreement with the quality or extent

of medical treatment or even negligence do not give rise to a Section 1983 claim.

"[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a

constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174

F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (active treatment of prisoner's

serious medical condition that ultimately resulted in death does not constitute the

requisite deliberate indifference, even if treatment was negligently administered); see

also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic

techniques or forms of treatment is indicated is a classic example of a matter for medical

judgment.  A medical decision not to order an X-ray, or like measures, does not represent

cruel and unusual punishment.  At most it is medical malpractice . . . ."); Corte v.

Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's

allegation that he had received "no treatment" because he believed he needed a referral

to a gastroenterologist, he failed to demonstrate deliberate indifference when he was seen

by prison medical personnel more than 100 times and received numerous gastrointestinal

tests and a chest x-ray, with all results being within a normal range.); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (Prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991) (Plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip.").

In addition, mere delay in receiving care is not in and of itself a constitutional violation.  <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 298.  No such showing can be made in this case in light of the extensive medical care LaRue has received during his incarceration.

Plaintiff's complaints in this case about his medical care fail to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish "deliberate indifference" under the applicable constitutional standard.

III.   <u>LOSS/DEPRIVATION OF PROPERTY</u>

LaRue alleges that his personal belongings were lost, stolen or misplaced at OPP and have never been returned to him. Construed broadly, these allegations may constitute a complaint that LaRue was deprived of his property in violation of his due process rights.  However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process."  <u>Augustine v. Doe</u>, 740 F.2d 322, 327 (5th Cir. 1984); <u>accord</u> <u>Neuwirth v. Louisiana State Bd. of Dentistry</u>, 845 F.2d 553, 556 (5th Cir. 1988); <u>Cuellar v. Tex. Employment Comm'n</u>, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status.  In general, the Supreme Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy.  <u>Alexander v. Ieyoub</u>, 62 F.3d 709, 712 (5th Cir. 1995) (citing <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Parratt</u>

v. Taylor, 451 U.S. 527 (1981), <u>overruled in part on other grounds by</u> <u>Daniels v.</u> <u>Williams</u>, 474 U.S. 327 (1986)); <u>accord</u> <u>Wilson v. Holt</u>, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in <u>Parratt</u>, a state prisoner, like LaRue, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy. <u>Parratt</u>, 451 U.S. at 543-44, <u>cited in</u> <u>Hudson</u>, 468 U.S. at 532.

In <u>Hudson</u>, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search."  <u>Hudson</u>, 468 U.S. at 519-20. The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons.  <u>Id.</u> at 529.  Finding that the State had provided an adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the

Court found no violation of his rights actionable under Section 1983.  "We hold that the Fourth Amendment has no applicability to a prison cell.  We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy."  Id. at 536.

The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property.  Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by LaRue in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine.  See, e.g., Hutchinson, 79 F. App'x at 54 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Marshall, 741 F.2d at 764 (Louisiana law provided adequate post-deprivation remedy when inmate's "personal property was scattered about and some items were missing" from his cell); see also Odom v. St. Tammany Parish S.O., No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009) (McNamara, J.) (state law provided adequate remedy for allegations that

deputies took inmate's mail, pictures, addresses for witnesses for his criminal case and copies of motions).  Such dismissals are mandated, even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy.  See Myers v. Klevenhagen, 97 F.3d 91, 95 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (Inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available.); Stewart v. Herrington, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008), adhered to on reconsideration, 2008 WL 3884394 (S.D. Miss. Aug. 14, 2008) (Inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided an adequate post-deprivation remedy.).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court.  Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and

must be dismissed.  LaRue remains free to pursue his claim concerning his property in state court against the state officials who allegedly mishandled his property.

## IV.   NO LIABILITY OF THE SHERIFF

LaRue makes no claim that Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio,

444 F.3d 417, 425-26 (5th Cir. 2006) (citing <u>Breaux v. City of Garland</u>, 205 F.3d 150, 161 (5th Cir. 2000)).   In the instant action, plaintiff has failed to establish either that defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 691-95 (1978); <u>Thompson v. Johnson</u>, 348 F. App'x 919, 921 (5th Cir. 2009) (citing <u>Mouille v. City of Live Oak</u>, 977 F.2d 924, 929 (5th Cir. 1992)); <u>Gates v. Texas Dep't of Protective & Regulatory Servs.</u>, 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983.   <u>Monell</u>, 436 U.S. at 691-95; <u>Thompson</u>, 348 F. App'x at 921-22; <u>Mouille</u>, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, LaRue must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." <u>Smith v. Brenoettsy</u>, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, LaRue must show that he is incarcerated under

20

conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." <u>Payne v. Pickett</u>, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither LaRue's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Sheriff Gusman.

## <u>RECOMMENDATION</u>

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____8th____ day of December, 2010.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

22